**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-6977 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff Luxottica Group S.p.A. ("Plaintiff" or "Luxottica") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Luxottica's Ray-Ban trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Luxottica's federally registered Ray-Ban trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Luxottica substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Luxottica to combat online counterfeiters who trade upon Luxottica's reputation and the goodwill of the federally registered Ray-Ban trademarks by selling and/or offering for sale unauthorized and unlicensed counterfeit products featuring the Ray-Ban trademarks (collectively, the "Counterfeit Ray-Ban Products"). The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine Ray-Ban products, while actually selling Counterfeit Ray-Ban Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and

2

interworking of their massive counterfeiting operation. Luxottica is forced to file these actions to combat Defendants' counterfeiting of the registered RAY-BAN trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Ray-Ban Products over the Internet. Luxottica has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable RAY-BAN trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Plaintiff Luxottica Group S.p.A. ("Luxottica") is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114. Luxottica is, in part, engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear products under federally registered trademarks, including, but not limited to, the RAY-BAN® family of marks.

5.      For generations, the Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN trademarks (collectively, the "Ray-Ban Products").

6.      Ray-Ban Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine Ray-Ban Products are instantly recognizable as such. In the United States and around the world, the Ray-Ban brand has come to symbolize high quality, and Ray-Ban Products are among the most recognizable eyewear in the world. Ray-Ban Products are distributed and sold

to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut and high-end department stores, and through the official Ray-Ban.com website, which was launched in 1995 and began e-commerce sales in 2009.

7.      Luxottica and its predecessors began using the RAY-BAN trademarks in 1937 and have continuously sold eyewear under the RAY-BAN and other trademarks (collectively, the "RAY-BAN Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the RAY-BAN Trademarks.  Luxottica's use of the marks has also built substantial goodwill in and to the RAY-BAN Trademarks.  The RAY-BAN Trademarks are famous marks and valuable assets.  Ray-Ban Products typically include at least one of the registered RAY-BAN Trademarks.

8.      Several of the RAY-BAN Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 595,513 | WAYFARER | For: Sunglasses in class 9. |
| 650,499 |  | For: Sunglasses, shooting glasses, and ophthalmic lenses in class 9. |
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |

4

| 1,093,658 |  | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |
|---|---|---|
| 1,320,460 |  | For: Sunglasses and carrying cases therefor in class 9. |
| 1,490,305 | RAY-BAN | For: Clothing, namely, t-shirts in class 25. |
| 1,537,974 | CLUBMASTER | For: Sunglasses in class 9. |
| 1,726,955 |  | For: Bags; namely, tote, duffle and all purpose sports bags in class 18.<br><br>For: Cloths for cleaning opthalmic products in class 21.<br><br>For: Clothing and headgear, namely, hats in class 25. |
| 2,718,485 | RAY-BAN | For: Goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18.<br><br>For: Clothing for men and women, namely, polo shirts; headgear, namely, berets and caps in class 25. |

| 3,522,603 |  | For: Sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses in class 9. |
| --- | --- | --- |

9.     The above registrations for the RAY-BAN Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the RAY-BAN Trademarks constitute *prima facie* evidence of their validity and of the exclusive right to use the RAY-BAN Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct copies of the United States Registration Certificates for the above-listed RAY-BAN Trademarks are attached hereto as **Exhibit 1**.

10.     The RAY-BAN Trademarks are distinctive when applied to the Ray-Ban Products, signifying to the purchaser that the products come from Luxottica and are manufactured to Luxottica's quality standards.  Whether Luxottica manufactures the products itself or contracts with others to do so, Luxottica has ensured that products bearing the RAY-BAN Trademarks are manufactured to the highest quality standards.

11.     The RAY-BAN Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Ray-Ban Products have enabled the Ray-Ban brand to achieve widespread recognition and fame and have made the RAY-BAN Trademarks some of the most well-known marks in the sun and prescription eyewear industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the Ray-Ban brand have made the RAY-BAN Trademarks valuable assets.

12. Luxottica has expended substantial time, money, and other resources in advertising and promoting the RAY-BAN Trademarks. In fact, Luxottica has expended millions of dollars annually in advertising, promoting and marketing featuring the RAY-BAN Trademarks. Ray-Ban Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the RAY-BAN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Luxottica. Ray-Ban Products have become among the most popular of their kind in the U.S. and the world. The RAY-BAN Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. *Id.* As such, the goodwill associated with the RAY-BAN Trademarks is of incalculable and inestimable value to Luxottica.

13. Genuine Ray-Ban Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Ray-Ban brand.

14. Since at least as early as 2009, genuine Ray-Ban Products have been promoted and sold at the official Ray-Ban.com website. Sales of Ray-Ban Products via the Ray-Ban.com website are significant. The Ray-Ban.com website features proprietary content, images and designs exclusive to the Ray-Ban brand.

**The Defendants**

15. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United

States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Ray-Ban Products to consumers within the United States, including the State of Illinois.

16.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the RAY-BAN Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Luxottica to learn Defendants' true identities and the exact interworking of their massive counterfeit network.   In the event that Defendants provide additional credible information regarding their identities, Luxottica will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The overwhelming success of the Ray-Ban brand has resulted in its significant counterfeiting.  Consequently, Luxottica regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.   In recent years, Luxottica has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Ray-Ban Products to consumers in this Judicial District and throughout the United States.  Despite Luxottica's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Ray-Ban Products.  Internet websites like the Defendant Internet Stores are estimated to receive tens of

millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

18.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Ray-Ban Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the RAY-BAN Trademarks into the URL, and the Defendant Internet Stores often include content and design elements on the websites that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. The Defendants have not been licensed or otherwise authorized to use any of the RAY-BAN Trademarks, and none of the Defendants are authorized retailers of genuine Ray-Ban Products.

19.     Defendants also deceive unknowing consumers by using the RAY-BAN Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Ray-Ban Products. Additionally, upon information and belief,

Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Ray-Ban Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Luxottica also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Ray-Ban Products.

20.    Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21.    Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Ray-Ban Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one

another, suggesting that the Counterfeit Ray-Ban Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from the official Ray-Ban.com website.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

23.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Luxottica's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal

11

accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

24.     Defendants, without any authorization or license, have knowingly and willfully used and continue to use the RAY-BAN Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Ray-Ban Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has sold Counterfeit Ray-Ban Products into the United States, including Illinois.

25.     Defendants' use of the RAY-BAN Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Ray-Ban Products, including the sale of Counterfeit Ray-Ban Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Luxottica.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26.     Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

27.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered RAY-BAN Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The RAY-BAN Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Luxottica Products provided under the RAY-BAN Trademarks.

28.  Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the RAY-BAN Trademarks without Luxottica's permission.

29.  Luxottica is the exclusive owner of the RAY-BAN Trademarks.  Luxottica's United States Registrations for the RAY-BAN Trademarks (**Exhibit 1**) are in full force and effect.  Upon information and belief, Defendants have knowledge of Luxottica's rights in the RAY-BAN Trademarks, and are willfully infringing and intentionally using counterfeits of the RAY-BAN Trademarks.  Defendants' willful, intentional and unauthorized use of the RAY-BAN Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Ray-Ban Products among the general public.

30.  Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31.  Luxottica has no adequate remedy at law, and if Defendants' actions are not enjoined, Luxottica will continue to suffer irreparable harm to its reputation and the goodwill of its well-known RAY-BAN Trademarks.

32.  The injuries and damages sustained by Luxottica have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit RAY-BAN Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

33.  Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34.  Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Ray-Ban Products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with Luxottica or the origin, sponsorship, or approval of Defendants' Counterfeit Ray-Ban Products by Luxottica. By using the RAY-BAN Trademarks on the Counterfeit Ray-Ban Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Ray-Ban Products.

35.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Ray-Ban Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

36.     Luxottica has no adequate remedy at law and, if Defendants' actions are not enjoined, Luxottica will continue to suffer irreparable harm to its reputation and the goodwill of its Ray-Ban brand.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE RAY-BAN TRADEMARKS**

37.     Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36.

38.     Luxottica is the exclusive owner of the RAY-BAN Trademarks. The U.S. Registrations for the RAY-BAN Trademarks (**Exhibit 1**) are in full force and effect. Additionally, the RAY-BAN Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

14

39. Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the RAY-BAN Trademarks have acted with bad faith intent to profit from the unauthorized use of the RAY-BAN Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the distinctive and famous RAY-BAN Trademarks.

40. Defendants have no intellectual property rights in or to the RAY-BAN Trademarks.

41. Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

42. Luxottica has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the RAY-BAN Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Luxottica.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq.*)**

43. Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Ray-Ban Products as those of Luxottica, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Ray-Ban Products, representing that their products have Luxottica's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

45.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

46.     Luxottica has no adequate remedy at law, and Defendants' conduct has caused Luxottica to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Luxottica will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Luxottica prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the RAY-BAN Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Ray-Ban Product or is not authorized by Luxottica to be sold in connection with the RAY-BAN Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Ray-Ban Product or any other product produced by Luxottica, that is not Luxottica's or not produced under the authorization, control, or supervision of Luxottica and approved by Luxottica for sale under the RAY-BAN Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Ray-Ban Products are those sold under the authorization, control, or supervision of Luxottica, or are sponsored by, approved by, or otherwise connected with Luxottica;

d.  further infringing the RAY-BAN Trademarks and damaging Luxottica's goodwill;

e.  otherwise competing unfairly with Luxottica in any manner;

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Luxottica, nor authorized by Luxottica to be sold or offered for sale, and which bear any of the RAY-BAN Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Ray-Ban Products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the RAY-BAN Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine Ray-Ban Product or not authorized by Luxottica to be sold in connection with the RAY-BAN Trademarks; and

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Luxottica a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3)  Entry of an Order that, at Luxottica's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Luxottica, and that the domain name

17

registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Luxottica's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Luxottica's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Luxottica's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as eBay, Inc. ("eBay"), iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any other related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars such as GoDaddy, name.com, and PDR LTD. D/B/A PUBLICDOMAINREGISTRY.COM, shall:

   a. disable and cease providing services for any accounts through which Defendants, currently or in the future, engage in the sale of goods using the RAY-BAN Trademarks, including, but not limited to, any accounts associated with the Defendants listed on Schedule A;

   b. disable any account linked to Defendants, linked to any e-mail addresses used by Defendants, or linked to any Defendant Domain Names ("Defendant's Registrar Accounts");

18

      c.   take any steps necessary to transfer to a registrar of Luxottica's selection any domain name reported by Luxottica, currently or in the future, being used to engage in the sale of goods using the RAY-BAN Trademarks;

      d.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the RAY-BAN Trademarks; and

      e.   take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

5) That Defendants account for and pay to Luxottica all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the RAY-BAN Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Luxottica be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the RAY-BAN Trademarks and $100,000 per domain name incorporating any of the RAY-BAN Trademarks pursuant to 15 U.S.C. § 1117(d);

7) That Luxottica be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Dated this 10th day of August 2015.          Respectfully submitted,


                                             /s/ Justin R. Gaudio
                                             Kevin W. Guynn
                                             Amy C. Ziegler
                                             Justin R. Gaudio
                                             Jessica L. Bloodgood
                                             Greer, Burns & Crain, Ltd.
                                             300 South Wacker Drive, Suite 2500
                                             Chicago, Illinois 60606
                                             312.360.0080 / 312.360.9315 (facsimile)
                                             kguynn@gbclaw.net
                                             aziegler@gbclaw.net
                                             jgaudio@gbclaw.net
                                             jbloodgood@gbclaw.net

                                             *Counsel for Plaintiff Luxottica Group S.p.A.*